### SIMONS *v.* DETROIT TWIST DRILL CO.

LANDLORD AND TENANT — SUMMARY PROCEEDINGS — TENANCY AT WILL—NOTICE TO QUIT—ESTOPPEL.

A defendant in summary proceedings, who, according to complainant's own theory, is at least a tenant at will, may defend on the ground that he has not received the statutory notice to quit, though he has all along claimed, and still claims, to be in possession under a lease for a fixed term.

Error to Wayne; Brooke, J. Submitted February 3, 1904. (Docket No. 73.) Decided May 31, 1904.

Summary proceedings by David W. Simons against the Detroit Twist Drill Company to recover the possession of

certain premises. From a judgment for defendant on verdict directed by the court, complainant brings error. Affirmed.

*Geer & Williams* and *H. R. Martin*, for appellant.

*William J. Gray* and *L. S. Trowbridge, Jr.*, for appellee.

MOORE, C. J.   The following statement of facts is taken from the brief of appellant's counsel:

"By a warranty deed dated February 8, 1896, the Diamond Match Company conveyed to Burroughs H. Rothwell the property known as the 'Old Diamond Match Plant.' Rothwell gave back to the Diamond Match Company a mortgage on the property, which bore date March 25, 1896, and, by a warranty deed bearing the same date, conveyed the property to E. W. Scane. By warranty deed bearing date November 12, 1897, Scane conveyed the property to A. C. Peoples, who gave back to Scane a mortgage on the property, which bore date November 15, 1897. This mortgage was duly recorded. On December 9, 1898, Peoples leased a portion of the property to the Detroit Twist Drill Company, the defendant in this case, for a term of five years, for the sum of $75 per month.

"On July 14, 1899, Scane commenced an action in the Wayne circuit court, in chancery, to foreclose the mortgage held by him, Peoples having made default. All persons having any interest in the fee were made parties defendant in this action, but the Detroit Twist Drill Company was not made a party defendant. A notice of the pendency of this action was duly recorded, and the foreclosure proceedings are admitted to have been regular. Scane purchased at the foreclosure sale, and on July 30, 1900, he was given a circuit court commissioner's deed of the premises. The right of redemption expired January 30, 1901, and on February 1, 1901, Bowen, Douglas & Whiting, Scane's attorneys, notified the defendant of this fact.

"On February 11, 1901, Scane wrote to N. G. Williams, defendant's manager, authorizing him to collect the rent due him from the defendant and the Star Corundum Wheel Company, which occupied another portion of the property 'monthly in advance, as monthly tenants,' and

out of such rents to pay the coal bills, and, if any balance
remained, to pay such balance to him. The portions of
the property not occupied by defendant had been leased by
Peoples by similar leases to the Star Corundum Wheel
Company, the Michigan Ornamental Glass Company, and
the Weiler Cash Register Company. After receiving the
letter from Scane, Williams immediately replied that the
occupants of the premises did not consider their leases had
been terminated, and objected to being designated as
monthly tenants. In reply to this, Scane wrote that he
did not intend to recognize their leases from Peoples.
After this correspondence the matter was dropped.

"Acting under the authority from Scane, Williams
had charge of the plant for about nine months, collected
the rent from the several occupants, paid the coal bills,
and rendered to Scane from time to time written state-
ments of account. In the meantime the Diamond Match
Company gave the statutory notice, by advertisement that
it would sell the property by virtue of the power of sale
contained in its mortgage, default having been made, and
on October 3, 1901, it purchased the property at this fore-
closure sale. Scane and Rothwell quitclaimed their right
of redemption to the Diamond Match Company in Novem-
ber, 1901, and the Diamond Match Company immediately
notified the defendant of this fact, and that Scane had no
further interest in the premises. It took actual charge of
the property, and collected the rent for two months from
the tenants.

"On January 27, 1902, the Diamond Match Company
conveyed the property by warranty deed to Rothwell,
who two days later conveyed it by warranty deed to
David W. Simons, the complainant in this proceeding.
Shortly before this date, Mr. Geer, as attorney for the
Diamond Match Company, and Mr. Clinton, its manager,
called upon Mr. Williams, and informed him that ar-
rangements had been made to sell the property to Mr.
Simons, and that the occupants of the property could
probably make some arrangement with Simons to occupy
the premises under him. Williams replied that they
claimed to occupy the premises 'under the Peoples lease,
and didn't care to make any other or different arrange-
ments.'

"After Mr. Simons became the owner, Mr. Rothwell,
in his behalf, called upon the different occupants on Feb-
ruary 5, 1902, and informed them that they would either

have to pay an increased rent or vacate the property. They refused to do either, claiming they had a right to stay under their leases from Peoples. It is their claim that the leases had not been affected by the foreclosure of the Scane mortgage, because they had not been made parties defendant in the action to foreclose.

"On February 24, 1902, Simons commenced proceedings before a circuit court commissioner, under section 11164, 3 Comp. Laws, to recover possession from the occupants of the property. The circuit court commissioner found the defendants guilty, and ordered a restitution of the property. The defendants appealed to the circuit court, where a jury trial was had in the case at bar, and a verdict was directed in favor of the defendant.

"The defendant claimed that the complainant was not entitled to recover possession for the following reasons:

"(1) Because, it not having been made a party defendant in the action in which the Scane mortgage was foreclosed, its rights under its lease from Peoples were not extinguished or affected by the foreclosure of said mortgage and the sale of the property.

"(2) Even though its rights were extinguished thereby, Scane and the Diamond Match Company, by their conduct (*i. e.*, by furnishing power to run the plant and collecting rent monthly), ratified the Peoples lease.

"(3) If the Peoples lease was not thus ratified, then that this conduct created a tenancy from month to month, which could only be terminated by a 30-day notice to quit, which was not given.

"(4) That if its rights under the Peoples lease were extinguished by the foreclosure of the Scane mortgage, and it is not entitled to claim that the conduct of Scane and the Diamond Match Company either ratified the Peoples lease or created a tenancy from month to month, still the complainant is not entitled to recover possession by this proceeding, because a purchaser at a chancery foreclosure sale cannot recover possession by summary proceedings under section 11164, 3 Comp. Laws.

"The complainant claims that he was entitled to recover possession, and that a verdict should have been directed in his favor, for the following reasons:

"(1) The rights of defendant under the Peoples lease were extinguished by the foreclosure of the Scane mortgage and the sale of the property.

"(2) Scane and the Diamond Match Company did not and could not by their conduct ratify the Peoples lease.

"(3) The defendant is estopped from claiming that Scane and the Diamond Match Company, by their conduct, created a tenancy from month to month.

"(4) Since the enactment of Act No. 200, Pub. Acts 1899, a purchaser at a chancery foreclosure sale may recover possession by summary proceedings under section 11164, 3 Comp. Laws."

Inasmuch as the lease of the Detroit Twist Drill Company has expired, more than five years having elapsed since it was made, we deem it necessary to discuss only one question, and that is, Was the defendant, upon plaintiff's theory of the case, entitled to notice before its tenancy could be terminated? Of course, if defendant is right in its claim that it should have been made a party to the foreclosure suit, the plaintiff cannot maintain this action. Defendant says that, conceding its position is wrong in that respect, and in respect to the other defenses it raises, upon plaintiff's theory of the case defendant was a tenant at will, and entitled to notice.

The correspondence clearly recognized the tenancy of defendant. The collection of the rent monthly under the authority of Scane for nine months, and by the Diamond Match Company for two months, recognized the tenancy of defendant. The verbal notice of Mr. Rothwell, acting for Mr. Simons, that they would either have to pay an increased rent or vacate the property, recognized that they were in possession as tenants; the difference between the parties being that the plaintiff and those who preceded him claimed defendant was a monthly tenant, while it claimed it was a tenant under a five-year lease.

By the statute, tenants at will and tenants by sufferance are entitled to notice to quit. Section 9257, 3 Comp. Laws. See the cases cited thereunder. Counsel for plaintiff say defendant is estopped from making this defense, because its claim that its five-year lease is good, and that it is in possession thereunder, is inconsistent with the claim that it is a tenant at will, entitled to notice; citing *Kunzie* v.

*Wixom,* 39 Mich. 384; *Wolf* v. *Holton,* 92 Mich. 136
(52 N. W. 459); *Trumpower* v. *Marcey,* 92 Mich. 529
(52 N. W. 999); and *Pattison* v. *Dryer,* 98 Mich. 564 (57
N. W. 814).

In *Kunzie* v. *Wixom* the court say there is no possible
foundation for any theory of a tenancy at will, and then
say :

"Did the defendant so occupy as to entitle him to con-
tend that he held in character of tenant by the plaintiff's
sufferance ?   Now, a tenant at sufferance is one who, hav-
ing entered under a lawful title, holds over without right,
and by reason of the laches of his landlord, after the ter-
mination of the interest.   And in order that the occupant
may assert and maintain against the supposed landlord
that his holding is at the latter's sufferance, it is essential
that he do not ground his retention of possession upon
a contrary theory and hostile basis.   If the keeping of
the possession is upon a claim which directly or by im-
plication repels or negatives all right of the plaintiff to
put an end to it, it involves a negative upon any right
of the tenant to insist that his holding is on terms per-
mitting the plaintiff to expel him, and he cannot elect to
be considered as tenant by sufferance.   Turning to the rec-
ord, and it appears too plain to admit of question that
the defendant holds this very position, and, refusing to
recognize any right of possession in the plaintiff, endeavors
to defend his own possession by setting up an inconsistent
and hostile ownership."

This is clearly a very different case from the one at bar.

In *Wolf* v. *Holton, supra,* defendant claimed title in
himself by adverse possession, and the court held that was
inconsistent with a claim of tenancy.

In *Trumpower* v. *Marcey, supra,* the question involved
was whether the property in a tree vested in a purchaser,
where a tenant was in possession, and afterwards cut the
tree for fuel, claiming the right to do so; and the court
said :

"There was no written conveyance of the tree, or con-
tract relating to it, and, of course, no record in the office
of the register of deeds.   The defendant became the pur-
chaser for value and in good faith of the property, without

notice of any claim of plaintiff to any of the standing trees. Under these circumstances, I think the title to the tree passed to the defendant.

"I do not think the question involved is strictly a question of estoppel. It is a question as to whether the property in this tree vested in the defendant by his purchase, and this necessarily depended upon whether he bought without notice of plaintiff's claim. In the absence of possession, the fact that there was no record notice of any claim to this tree would be sufficient to determine the question of property in favor of defendant. And while it is true that possession is notice to put a purchaser upon inquiry, yet the force of that notice is broken if, upon inquiry, the tenant disclaims title."

A reference to *Pattison* v. *Dryer, supra,* will show the question involved here was not involved in that case. None of the cases, we think, conclude the defendant from making this defense. Here both parties admit the plaintiff was the landlord and defendant was the tenant. The difference between them in that regard is that defendant claims it is tenant for a fixed term of five years, while the plaintiff claims it is a monthly tenant. Upon plaintiff's own theory of the case, because of the provisions of the statute, he cannot terminate the tenancy without giving notice of his intention to do so.

Judgment is affirmed.

GRANT and HOOKER, JJ., concurred. CARPENTER, J., did not sit. MONTGOMERY, J., took no part in the decision.